Approved: _____
ANDEN CHOW
Assistant United States Attorney

Before:   THE HONORABLE LISA M. SMITH
          United States Magistrate Judge
          Southern District of New York

------------------------------------X
                                    :      16mj 796
UNITED STATES OF AMERICA,           :
                                    :      **COMPLAINT**
           - v. -                   :
                                    :      Violations of
                                    :      18 U.S.C. §§ 922(g),
STEVEN MCKINLEY,                    :      924(c); 21 U.S.C.
                                    :      § 841(a)(1)
           Defendant.               :
                                    :      COUNTY OF OFFENSE:
                                    :      ORANGE
------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss.:

SEAMUS CLARKE, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

COUNT ONE

1. On or about February 3, 2016, in the Southern District of New York, STEVEN MCKINLEY, the defendant, intentionally and knowingly possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

2. The controlled substance involved in the offense was mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C).)

COUNT TWO

3. On or about February 3, 2016, in the Southern District of New York, STEVEN MCKINLEY, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the

narcotics offense charged in Count One of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

## COUNT THREE

4. On or about February 3, 2016, in the Southern District of New York, STEVEN MCKINLEY, the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess, in and affecting commerce, firearms, to wit, two .38 caliber Smith & Wesson revolvers, a .22 caliber Taurus revolver, a .357 magnum Smith & Wesson revolver, a .22 caliber semi-automatic handgun, and a twenty gauge Mossberg shotgun, all of which previously had been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(g)(1).)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

5. I am a Special Agent with the FBI and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other FBI agents, and local law enforcement officers, witnesses and others, as well as my examination of reports, records, and video footage. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6. I have reviewed an affidavit ("Affidavit-1") submitted by a sergeant ("Sergeant-1") employed by the City of Middletown Police Department ("MPD") in support of an application for a warrant authorizing the search of Apartment A#6 ("Apartment-1") at 80 Sproat Street, a multifamily dwelling in Middletown, New York. To establish the existence of probable cause to search Apartment-1, Sergeant-1's affidavit detailed the following information, in substance and in part:

a. In or about early February 2016, Sergeant-1 met with a confidential source (the "CS"), who had provided information that was proven reliable by subsequent law enforcement investigation. The CS informed Sergeant-1 that an individual whom the CS identified as "Shadow Black," later identified as STEVEN MCKINLEY, the defendant, possessed firearms at Apartment-1. The CS stated that MCKINLEY lived at Apartment-1 and that on prior occasions, the CS had observed MCKINLEY in possession of two handguns and a shotgun at Apartment-1.

b. The CS also stated that he was present at Apartment-1 on numerous occasions in the preceding three months during which MCKINLEY engaged in narcotics transactions. Further, MCKINLEY had admitted to the CS that MCKINLEY possessed the aforementioned firearms for protection because MCKINLEY sold drugs.

c. Sergeant-1 spoke to a parole officer who confirmed that MCKINLEY resides at Apartment-1. Sergeant-1 also completed a criminal history search for MCKINLEY, which showed no firearms permit for MCKINLEY and showed a prior felony conviction.

7. I have reviewed a search warrant issued on or about February 1, 2016, on the basis of Affidavit-1 ("Warrant-1"). Warrant-1, which was issued by a City of Middletown City Court judge, authorized law enforcement officers to search Apartment-1 at any time of the day or night without giving advanced notice to the occupants.

8. I have spoken to a MPD officer who participated in the search of Apartment-1 ("Officer-1") and reviewed relevant MPD paperwork. From these sources I have learned, in substance and in part, the following information:

a. On or about February 3, 2016, law enforcement officers executed Warrant-1. Law enforcement entered Apartment-1 through the front door and proceeded into the only bedroom in Apartment-1. Inside the bedroom, law enforcement encountered an individual law enforcement recognized to be STEVEN MCKINLEY, the defendant. Also in the bedroom was a female individual. Both MCKINLEY and the female were detained and advised of their Fifth Amendment rights while the search was conducted.

b. During the course of the search, law enforcement recovered approximately .1 grams of a substance that

later tested positive for the presence of cocaine from a drawer of an armoire in the bedroom. In the same drawer, law enforcement also recovered a box containing drug packaging materials.

      c. Also in the same drawer of the armoire, law enforcement recovered a .22 caliber Taurus revolver, loaded with seven rounds, as well as a plastic bag containing five rounds of .38 caliber bullets. On the floor under the armoire, law enforcement recovered a .38 caliber Smith & Wesson revolver, loaded with five rounds.

      d. Under the bed in the bedroom, law enforcement recovered a twenty gauge Mossberg shotgun loaded with five rounds.

      e. In a dresser, also located in the bedroom, law enforcement recovered 14 twenty gauge shotgun shells. On top of the dresser, law enforcement recovered a scale.

      f. Under the kitchen sink, law enforcement recovered a blender, a meat tenderizer, and what law enforcement believed to be cutting agent.[1]

      9. I have reviewed an affidavit ("Affidavit-2") submitted by Sergeant-1 in support of an application for a warrant authorizing the search of the downstairs apartment ("Apartment-2") at 75 Monhagen Avenue, a multifamily house in Middletown, New York. To establish the existence of probable cause to search Apartment-2, Sergeant-1's affidavit detailed the following information, in substance and in part:

      a. In or about early February, Sergeant-1 met with the CS, who had provided information that was proven reliable by subsequent law enforcement investigation. The CS informed Sergeant-1 that he knew an individual whom the CS identified as "Shadow Black," later identified as STEVEN MCKINLEY, the defendant, to possess firearms.

      b. The CS stated that on or about December 25, 2015, MCKINLEY asked the CS to bring three handguns from Apartment-1 to Apartment-2. The CS did so, and per MCKINLEY's instruction, the CS gave the three handguns to an individual at Apartment-2 whom the CS knew to be MCKINLEY's sister (the

---

[1] Based on my training and experience, these items are commonly used by drug dealers to prepare cocaine for sale.

4

"Sister"). The CS observed the Sister place the handguns in to locations within Apartment-2: one handgun in a bag on the floor of a closet and the other two in a dresser.

   c. The CS also related that on or about January 30, 2016, the CS, the Sister, and another individual ("Individual-1"), took one of the handguns from Apartment-2 to a nearby cemetery. At the cemetery, Individual-1 and the Sister took turns firing the handgun before bringing the handgun back to Apartment-2.

   d. The CS informed Sergeant-1 that neither the Sister nor Individual-1 had permits for the firearms.

  10. I have reviewed a search warrant issued on or about February 1, 2016, on the basis of Affidavit-2 ("Warrant-2"). Warrant-2, which was issued by a City of Middletown City Court judge, authorized law enforcement officers to search Apartment-2 at any time of the day or night without giving advanced notice to the occupants.

  11. I have spoken to a MPD officer who participated in the search of Apartment-2 ("Officer-2") and reviewed relevant MPD paperwork. From these sources I have learned, in substance and in part, the following information:

   a. On or about February 3, 2016, law enforcement officers executed Warrant-2. Law enforcement entered Apartment-2 through the front door and encountered a female individual ("Individual-2") sleeping in the living room and the Sister and Individual-1 in a bedroom off of the kitchen. There were also three children sleeping in a second bedroom. The Sister, Individual-1 and Individual-2 were detained while the search was conducted.

   b. During the course of the search, in the bedroom in which the Sister and Individual-1 had been, law enforcement recovered an unloaded .38 caliber Smith & Wesson revolver from a couch. From a dresser in the same bedroom, law enforcement recovered two boxes of ammunition containing 35 rounds of .38 short Colt bullets and 50 rounds of 9mm bullets.

   c. In a third bedroom that was unoccupied, law enforcement recovered an unloaded .357 magnum Smith & Wesson revolver from a closet and a .22 caliber Smith & Wesson semi-automatic handgun from a dresser drawer. Next to the .22 caliber

Smith & Wesson semi-automatic handgun was its magazine, loaded with one round.

12. I have spoken with a MPD detective ("Detective-1"), who interviewed STEVEN MCKINLEY, the defendant, at MPD headquarters on or about February 3, 2016, and I have learned, in sum and substance, the following information:

    a. MCKINLEY waived his Fifth Amendment rights and agreed to speak with law enforcement. Among other things, MCKINLEY admitted that the packaging materials and the scale recovered in Apartment-1 belonged to him.

    b. MCKINLEY also admitted that the three firearms recovered from Apartment-1 and the three firearms recovered from Apartment-2 belonged to him. MCKINLEY had purchased them from an individual, and MCKINLEY was planning to pawn them.

    c. MCKINLEY also made a written statement memorializing his verbal statements.

13. Based on my conversation with a special agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), I have learned that all six firearms recovered from Apartment-1 and Apartment-2 were manufactured outside of New York State.

14. I have reviewed the criminal history records pertaining to STEVEN MCKINLEY, the defendant, which show that MCKINLEY was convicted on or about October 18, 2006, in Orange County Court, of Robbery in the Second Degree, in violation of New York Penal Law § 160.10, a felony, which is punishable by imprisonment of more than one year.

15. WHEREFORE, the deponent prays that STEVEN MCKINLEY, the defendant, be imprisoned, or bailed, as the case may be.

_____
Special Agent Seamus Clarke
Federal Bureau of Investigation

Sworn to before me this
3rd day of February, 2016

_____
THE HONORABLE LISA M. SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK